## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DANIELLE PICKERING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-06-466-M |
| | ) | |
| THE CITY OF OKLAHOMA CITY, | ) | |
| and TAYLOR SHAW, individually, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This case is scheduled for trial on the Court's October 2007 trial docket.

Before the Court is defendant City of Oklahoma City's ("City") Motion for Summary Judgment [docket no. 31], filed August 1, 2007. On August 20, 2007, plaintiff filed her response, and on August 31, 2007, the City filed its reply. Based upon the parties' submissions, the Court makes its determination.

This case arises out of the arrest of plaintiff, Danielle Pickering, by a City police officer for disorderly conduct. Plaintiff subsequently filed the instant action against the arresting officer Taylor Shaw ("Shaw") and the City, pursuant to 42 U.S.C. § 1983, alleging that she had been subjected to excessive force in violation of her constitutional rights. Plaintiff also alleges injuries resulted from tortious assault and battery, either intentionally or negligently inflicted.

## I.   INTRODUCTION

On the afternoon of October 1, 2004, plaintiff was involved in a non-injury automobile accident. As Shaw arrived on the scene of the accident, plaintiff, one of the involved drivers, was exiting the parking lot. Shaw stopped plaintiff and asked her to produce identification and insurance verification information, and plaintiff, in turn, produced an outdated insurance verification form and

stated she could not locate her driver's license.    Thereafter, plaintiff provided identifying information to Shaw including her name, date of birth, and social security number.

Shaw processed plaintiff's identifying information through his mobile data terminal (MDT) to verify plaintiff's identity through local records.    However, it is disputed whether the MDT confirmed plaintiff's identity.    Thereafter, Shaw attempted to verify plaintiff's identity through the 800 Unit as an alternative method of confirmation.    Although this attempt was unsuccessful, another officer verified plaintiff's identity after plaintiff was placed into custody.

At Shaw's request, plaintiff exited her vehicle and situated herself in the back seat of Shaw's patrol car while he discussed the automobile accident with the driver of the other car.    While Shaw was talking with the other driver, plaintiff knocked on the patrol car window and waived at Shaw. Shaw responded by opening the patrol car door.    Plaintiff indicated to Shaw she couldn't breathe and asked to exit the patrol car.    Shaw refused her request but rolled down both rear windows. Later, plaintiff grabbed a rear window and shook it.    In response, Shaw warned that he would shock her with his taser gun if she did not cease shaking the window.    Plaintiff complied and ceased shaking the window.

Afterward, plaintiff kicked and knocked the rear driver's side window off track while laying on her back in the rear of the patrol car.    Shaw returned to his patrol car and charged plaintiff with destruction of City equipment.    A series of disputed acts occurred as Shaw physically secured and handcuffed plaintiff, during which he threatened to shock plaintiff with his taser gun if uncooperative with the arrest.    Shaw contends plaintiff resisted arrest in disallowing him to handcuff her hands behind her back.    Plaintiff contends that Shaw pulled her out from his patrol car, pinned her against the car, and had enough control of her to allow him to handcuff both hands behind her

2

back.  A struggle ensued between Shaw and plaintiff as Shaw leg-swept plaintiff to the ground, handcuffed one of plaintiff's hands, and dragged her face down approximately one foot toward his patrol car where he retrieved his taser gun and discharged it onto plaintiff.  At this point, plaintiff alleges that Shaw stunned her neck and base of her skull at least four times.  By contrast, Shaw denies that he electronically shocked the plaintiff more than one time.  Shaw completed the arrest of plaintiff by handcuffing her other hand.

Plaintiff was taken into custody and charged with destruction of City equipment, interfering with official process and resisting arrest, failure to show insurance and following too closely.  Prior to the incident, plaintiff alleges that the City provided Shaw with insufficient in-service training regarding the use of deadly force.  The City and Shaw counter that Shaw attended eight hours of training specifically comprising proper use of the taser gun in addition to more generalized training sessions.

On June 3, 2005, plaintiff filed an action against defendants in the District Court of Oklahoma County, *Pickering v. The City of Oklahoma City, et al.*, pursuant to 42 U.S.C. § 1983, *inter alia*, alleging violation of constitutional rights and excessive force.  This action was removed from the state court to this Court by defendants on June 27, 2005.  On March 6, 2006, the parties agreed to a dismissal of this lawsuit without prejudice, which was granted by this Court on March 6, 2006.  On April 12, 2006, plaintiff re-filed this same action against defendants in the District Court of Oklahoma County, *Pickering v. City, et al.,* CJ-2006-3036, stating the same allegations as contained in the previously dismissed lawsuit.  This action was removed from the state court to this Court by defendants on April 26, 2006.  Defendants now move for summary judgment as to plaintiff's claims.

II.    SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.  When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party."  *19 Solid Waste Dep't Mechanics v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts.  Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

III.    DISCUSSION

A.    Excessive Use of Force

Claims that law enforcement officials have used excessive force in the course of arrest, investigatory stop, or seizure of a person must be coupled with a specific constitutional violation, and then judged by the specific standard which governs that right.  *Graham v. Connor*, 490 U.S. 386, 387 (1989).  This requires analysis of excessive force claims under the Fourth Amendment's objective reasonableness standard, rather than the generic substantive due process standard.  *Id.* at

394.  The key judicial inquiry "is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation". *Id.* at 397 (internal quotations and citations omitted).  The Supreme Court has outlined three factors to evaluate reasonableness under the Fourth Amendment: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight.  *Graham*, 490 U.S. at 396 (1989).  In relation to the third factor, the Tenth Circuit has held that the Fourth Amendment recognizes both the right of the police to use some degree of physical force, and that the level of force be commensurate with the level of resistance offered by the suspect.  *Hinton v. City of Elwood*, 997 F.2d 774, 781 (10th Cir. 1993).

The Court has carefully reviewed the parties' briefs and evidentiary submissions.  Viewing the evidence in the light most favorable to plaintiff and viewing all reasonable inferences in plaintiff's favor, as the Court must when addressing a motion for summary judgment, the Court finds that while the first two factors weigh in favor of plaintiff's claim that Shaw's use of force was constitutionally excessive,[1] the third factor, whether the suspect is actively resisting arrest or attempting to evade arrest by flight, however, weighs in favor of defendants.[2]

----

[1]Defendants concede that plaintiff's offenses of failing to have a valid driver's license in possession and failure to show verification of insurance were minor.  Shaw has also testified that he did not feel threatened or fear for his safety.  *See* Defendant City's Reply to Plaintiff's Response to Defendant City's Motion for Summary Judgement, at 6.

[2]The Tenth Circuit held in *Hinton v. City of Elwood*, 997 F.2d 774, 781 (10th Cir. 1993) that officers did not use constitutionally excessive force against defendant.  The alleged conduct of police in grabbing suspect, pushing him to ground, struggling with him, shoving his face into asphalt, twisting his arm behind his back, and using electronic stun gun "numerous amounts of times" to subdue him was objectively reasonable under circumstances, and did not amount to use of excessive force in violation of Fourth Amendment, though offense for what suspect was

5

Here, plaintiff relies on the general argument that she complied with Shaw's command when he stopped her vehicle.  However, plaintiff admits to shaking the patrol car windows and later kicking the patrol car window off-track while being detained in the back of the car.  *See* Exhibit 5 to Plaintiff Danielle Pickering's Response to Defendant City of Oklahoma City's Motion for Summary Judgment, Minyen Deposition, at 60.  Consequently, the Court finds plaintiff at most was intermittently compliant with Shaw's commands during the entire episode and that plaintiff, undeniably, actively and openly resisted arrest by refusing to let Shaw handcuff her left arm.[3]  *See* Exhibit 1 to Defendant City's Brief in Support of its Motion for Summary Judgment, Minyen Deposition, at 68.  Although plaintiff points to the four times Shaw allegedly used the taser gun to support her claim of excessive force, plaintiff does not contend that Shaw continued to use the taser gun once he succeeded in handcuffing her.  Thus, the Court finds the amount of force used by Shaw was reasonable and commensurate given the omission of evidence tending to show that Shaw engaged in further aggressive moves after securing plaintiff in handcuffs.  *See Hinton*, 997 at 781 (10th Cir. 1993) (upholding summary judgment when no evidence stun gun use continued once defendant police officers succeeded in handcuffing plaintiff).

Given the totality of the circumstances, the Court finds these actions give rise to a reasonable and objective belief by Shaw that plaintiff was actively attempting to evade arrest.  The Court further

initially stopped was misdemeanor of disturbing the peace and suspect posed no immediate threat to police or public, in view of level of resistence offered by suspect.  *See Hinton v. City of Elwood*, 997 F.2d 774, 781 (10th Cir. 1993).

[3] Plaintiff admits that Shaw repeatedly asked her for her other hand while he pinned her against the patrol car.  Plaintiff refused to provide Shaw with her other arm.  *See* Exhibit 5 to Plaintiff Danielle Pickering's Response to Defendant City of Oklahoma City's Motion for Summary Judgment, Minyen Deposition, at 66.

finds insufficient evidence creating a genuine issue of material fact as to whether plaintiff's constitutional rights were violated by the use of excessive force in the instant case.  Accordingly, the Court finds that defendant's motion for summary judgment should be granted as to plaintiff's excessive use of force claim.

        B.      Customs, Policies and Training

The Tenth Circuit has held that, in a municipal liability case under § 1983, there is no basis for holding a city liable in the absence of use of excessive force.  *Hinton*, 997 F.2d at 782-83.  Since the has found that Shaw's conduct did not violate plaintiff's Fourth Amendment rights, no liability may be imposed against the City.  Accordingly, this Court grants summary judgment as to plaintiff's claims regarding the City's customs, policies and training.

        C.      State Law Claims

Upon review of the Complaint, the Court finds that the remaining claims in this case are claims based upon state law.  Plaintiff has not shown complete diversity of the parties nor the requisite amount in controversy to establish jurisdiction in this case pursuant to 28 U.S.C. § 1332. As the Fourth Amendment and 42 U.S.C. § 1983 claims are no longer before the Court, and they were the sole basis for this Court's original jurisdiction, the Court declines to exercise jurisdiction of the remaining claims and dismisses them without prejudice pursuant to 28 U.S.C. § 1367(c).

IV.    CONCLUSION

For the reasons set forth above, the Court"

(1)    GRANTS defendant's Motion for Summary Judgment [docket no. 31] as to
       plaintiff's excessive force claim and municipal liability claim.

(2)    DECLINES to entertain jurisdiction over plaintiff's state law claims and dismisses
       them without prejudice pursuant to 28 U.S.C. § 1367(c).

This Order effectively terminates this action in this Court.

**IT IS SO ORDERED this 11th day of September, 2007.**

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE